IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| **In re:** | * | |
| **STEVEN R. ALLEN** | * | Case No: 25-12719 |
| Debtor. | * | (Chapter 7) |
| * * * * * * * * | * | * * * * * |
| **FRANKLIN CAPITAL GROUP, LLC**<br>32300 Northwestern Hwy, Suite 215<br>Farmington Hills, Michigan 48334 | *<br><br>* | |
| and | * | |
| **FRANKLIN CAPITAL MANAGEMENT, LLC**<br>32300 Northwestern Hwy, Suite 215<br>Farmington Hills, Michigan 48334 | *<br><br>* | |
| *Plaintiffs* | * | |
| v. | * | Adversary No. _____ |
| **STEVEN R. ALLEN**<br>117 Lejeune Way<br>Annapolis, Maryland 21401 | *<br><br>* | |
| *Defendant*. | * | |
| * * * * * * * * | * | * * * * * |

**COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR**

Plaintiffs, Franklin Capital Group, LLC and Franklin Capital Management, LLC, by their undersigned attorneys, pursuant to Rules 4004 and 7001(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 727 of Title 11 of the United States Code, hereby file this Complaint Objecting to Discharge of Debtor, and in support thereof, state as follows:

### I.     Consent to Entry of Final Orders and Judgments

1. Pursuant to Bankruptcy Rule 7008 and Local Bankruptcy Rule 7012-1, Plaintiffs hereby consent to the entry of final orders and judgments by the Judges of the United States Bankruptcy Court for the District of Maryland.

### II.     Jurisdiction, Venue, and Standing

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

3. Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

5. Plaintiffs have standing to bring this action pursuant to section 727 of the Bankruptcy Code and Bankruptcy Rule 4004.

### III.     Parties

6. Plaintiff, Franklin Capital Group, LLC ("FCG") is a limited liability company organized and existing under the laws of the State of Michigan with a principal place of business located at 32300 Northwestern Hwy, Suite 215, Farmington Hills, Michigan 48334.

7. Plaintiff, Franklin Capital Management, LLC ("FCM") is a limited liability company organized and existing under the laws of the State of Michigan with a principal place of business located at 32300 Northwestern Hwy, Suite 215, Farmington Hills, Michigan 48334.

8. Defendant/Debtor, Steven R. Allen ("Allen" or the "Debtor"), is the debtor in the above-captioned chapter 7 bankruptcy case and is the Defendant in this adversary proceeding.

### IV.     Facts

A. *The Bankruptcy Case*

9. On March 31, 2025 ("Petition Date"), Allen commenced this case by filing a voluntary petition under chapter 7 of the Bankruptcy Code.

10. On March 31, 2025, Allen filed his Schedules and Statement of Financial Affairs ("SOFA").

11. Question 19 on Schedule A/B asks, "Do you own or have any legal or equitable interest in any of the following: non-publicly traded stock and interests in incorporated or unincorporated businesses, including an interest in an LLC, partnership, and joint venture?" Allen answers, "Yes" and discloses his 100% membership interest in Annapolis Site Development, Inc. with a value of $0 and his 100% membership in Annapolis Site Dev. Inc. with a value of $0.

12. Question 37 on Schedule A/B asks, "Do you own or have any legal or equitable interest in any business-related property?" Allen answers, "No."

13. The Schedules contain a "Declaration About An Individual Debtor's Schedules" that the Debtor signed beneath the statement: "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." ECF No. 1, page 75.

14. Question 4 of the SOFA asks, "Did you have any income from employment or from operating a business during this year or the two previous calendar years?" Allen answered that he had earned $48,461.52 in wages in 2025, $40,384.00 in wages and $11,000.00 from operating a business in 2024, and $52,064.00 in wages in 2023.

15. Question 5 of the SOFA asks, "Did you receive any other income during this year or the two previous calendar years?" Allen answered "No."

16. Question 8 of the SOFA asks, "Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefitted an insider?" Allen answered "No."

17. Question 13 of the SOFA asks, "Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?" Allen answers, "No."

3

18. Question 18 of the SOFA asks, "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" Allen answers, "No."

19. Allen signed SOFA beneath the statement: "I have read the answers on this Statement of Financial Affairs and any attachments, and I declare under penalty of perjury that the answers are true and correct." Dkt. No. 1 at p. 82.

B. *The Judgments Against Allen*

20. On or about March 11, 2022, FCG extended a term loan to Annapolis Site Development, Inc. ("ASD"), which was evidenced by a Promissory Note executed by Annapolis Site Development, Inc. in favor of FCG in the principal amount of One Million Dollars ($1,000,000) (the "First Loan").

21. The First Loan included a grant of security interests in favor of FCG and was to be repaid by consecutive monthly installments of principal with all remaining unpaid balance and accrued interest to be paid in full on the maturity date of March 11, 2025.

22. On or about March 11, 2022, Allen executed a Continuing Guaranty, in which he guaranteed repayment of the First Loan.

23. Additionally, on or about March 11, 2022, ASD and Allen (the "Judgment Debtors") executed a Warrant Authorizing Confession of Judgment, in which the Judgment Debtors consented to entry of a confession judgment in favor of FCG in the event of a default under the First Loan.

24. On or about June 28, 2022, FCG extended a second term loan to ASD, which is evidenced by a Promissory Note executed by ASD in favor of FCG in the principal amount of Five Hundred Thousand Dollars ($500,000) (the "Second Loan").

25. The Second Loan included a grant of security interests in favor of FCG and was to be repaid by consecutive monthly installments of principal with all unpaid balance and accrued interest to be paid in full on the maturity date of June 28, 2023.

26. Both the First Loan and the Second Loan contained cross-collateralization and cross-default provisions.

27. In or around March 11, 2022, FCM and ASD entered into that certain engagement letter (the "Engagement Letter").

28. On or about March 11, 2022, Allen executed a Continuing Guaranty in favor of FCM, in which he guaranteed payment of obligations under the Engagement Letter.

29. Additionally, on or about March 11, 2022, ASD and Allen (the "Judgment Debtors") executed a Warrant Authorizing Confession of Judgment, in which the Judgment Debtors consented to entry of a confession judgment in favor of FCM in the event of a default under the Engagement Letter.

30. On February 2, 2022, FCM recorded a UCC-1 with the Maryland State Department of Assessments and Taxation which perfected FCM's security interest in all of ASD's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, … Instruments, Inventory, Investment Property … and proceeds arising from the sale, rent, lease, casualty loss or other disposition of any of the above … including after-acquired property."

31. Under the terms of the First Loan, the Second Loan, and the Engagement Letter, an event of default would occur if ASD failed to make payments when and as due, made a material misrepresentation to FCG and/or FCM, or disposed of all or any material portion of its assets without prior authorization from Franklin.

32. In or around 2023, the Judgment Debtors failed to make payments that were due and owing under the First Loan, the Second Loan, and the Engagement Letter. Such failures constituted material events of default that the Judgment Debtors failed to cure.

33. In or around October 2023, FCG filed for confessed judgments against the Judgment Debtors for the unpaid amounts due and owing under the First Loan, and the Second Loan.

34. In or around October 2023, FCM filed for confessed judgments against the Judgment Debtors for the unpaid amounts due and owing under the Engagement Letter.

35. On October 25, 2023, the Oakland County Circuit Court for the State of Michigan entered a confessed judgment in Case No. 2023-203402-CB against the Judgment Debtors and in favor of FCG in the amount of $1,510,656.47 representing the indebtedness owed under the First Loan and the Second Loan (the "$1.5mil Judgment"). **Exhibit 1**, "$1.5mil Judgment, Case No. 2023-203402-CB.

36. Also on October 25, 2023, the Oakland County Circuit Court for the State of Michigan entered a confessed judgment in Case No. 2023-203408-CB against the Judgment Debtors in the amount of $47,500.00 representing the indebtedness owed under the Engagement Letter (the "$47.5k Judgment" and together with the "$1.5mil Judgment, the "Judgments"). **Exhibit 2**, $47.5k Judgment, Case No. 2023-203408-CB.

37. On March 7, 2024, FCG indexed the $1.5mil Judgment with the Circuit Court For Anne Arundel County via the case captioned *Franklin Capital Management LLC vs. Stephen Allen, et al.*, Case No. C-02-JG-24-001950. **Exhibit 3**, Notice of Foreign Judgment for the $1.5mil Judgment.

38. On March 7, 2024, FCM indexed the $47.5k Judgment with the Circuit Court For Anne Arundel County via the case captioned *Franklin Capital Management LLC vs. Stephen Allen,*

*et al.*, Case No. C-02-JG-24-001949. **Exhibit 4**, Notice of Foreign Judgment for the $47.5k Judgment.

39. Neither of the Judgment Debtors have satisfied any part of the Judgments.

C. *The Formation Of the Alter Ego*

40. On November 10, 2016, Allen filed Articles of Incorporation with the State of Maryland for ASD for the purpose of "site development & excavation" and naming Allen the 100% sole owner of the company. Between 2015 and 2019, five judgments were entered against the ASD, including three related to unpaid state and federal taxes. The company was administratively forfeited on October 3, 2022 for failure to file a 2021 property return.

41. On April 25, 2024 Allen filed Articles of Incorporation with the State of Maryland for Annapolis Site Dev Inc. ("ASD II") for the purpose of "Construction" and naming Allen the 100% sole owner of the company. ADS II is presently not in good standing with the Maryland State Department of Assessments and Taxation.

42. Allen has previously testified under oath that he formed ADS II so that he could open a new bank account after the accounts in the name of ASD were garnished by other creditors.

43. According to Allen's sworn testimony, he caused ASD to transfer a majority of its assets to ASD II in 2024 (i.e., after the Judgments had been obtained in Michigan and indexed in Maryland).

44. Specifically, Allen caused ASD to sell twelve pieces of heavy construction equipment collectively valued at approximately $1.5 million for $70,000, far less than fair market value, and then further caused the sales proceeds to be deposited into bank accounts held solely in the name of ASD II.

45. Further, Allen testified that beginning in and around April 2024, he caused all payments, accounts receivable, and income intended for ASD to be deposited into bank accounts held solely in the name of ASD II.

46. Allen also testified that he used the Wells Fargo bank account held in ASD II's name to pay for his personal expenses and the personal expenses of his family members:

   a. May 10, 2024 - $4,500 transfer from ASD II's account to pay Allen's rent on his personal residence

   b. May 2024 - $1,000 from ASD II's account to Brianna Allen, Allen's daughter, to pay a vet bill for her horse

   c. May 15, 2024 - $3,000 transfer from ADS II's account to pay Allen's back rent owed on his personal residence

   d. May 29, 2024 - $4,500 cash withdrawal, Allen was unable to testify to business reason

   e. June 7, 2024 - $5,000 cash withdrawal, Allen was unable to testify to business reason

   f. June 10, 2024 - $18,000 cash withdrawal, Allen was unable to testify to business reason

   g. July 24, 2024 - $15,132.88 transfer to a JP Morgan Chase account, Allen was unable to testify to business reason, but thought it might have been a payment on his two personal cars

47. The transactions described in the foregoing paragraphs 43 to 46 are collectively referred to hereafter as the "Transfers."

48. Allen considers ASD to be "inactive" following the Transfers and, for all practical purposes, Judgment Debtor, ASD, no longer functions as an operating entity.

49. Indeed, on September 23, 2024, ASD filed for Chapter 7 bankruptcy in the District of Maryland.

50. Allen filed for personal chapter 7 bankruptcy on the same day. His proceedings were dismissed without discharge, but he refiled the present case on March 31, 2025.

51. At all relevant times, the ownership of ASD and ASD II has been identical, with Allen retaining sole ownership.

52. At all relevant times, the management of ASD and ASD II has been identical.

    a. Specifically, at the time of the Transfers, and for many years prior, Defendant Allen was the director of ASD.

    b. And at all relevant times prior to and following the Transfers, Defendant Allen has likewise been the managing member of ASD II.

53. The Transfers were effectuated for the improper purpose of placing ASD's assets beyond FCG's and FCM's reach and with the actual intent to defraud Plaintiffs. Allen effectuated the Transfers for personal benefit and without any legitimate business objective of ASD.

54. This improper purpose is evidenced by the timing of the formation of ASD II and the timing of the Transfers, as well as Allen's inability under oath to articulate any legitimate business purpose for the Transfers.

55. ASD II did not pay ASD fair consideration in connection with the Transfers.

56. Rather, in connection with the Transfers, ASD conveyed at least $70,000 to ASD II without fair consideration.

57. Financial records and Allen's own testimony demonstrate that Allen routinely failed to observe corporate formalities by treating the bank accounts of the companies as his personal piggy bank, and "advancing" money between and among companies without fair consideration or any intention to reconcile payments.

**COUNT I— DENIAL OF DISCHARGE (11 U.S.C. § 727(a)(2))**

58. Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

59. Among the enumerated grounds set forth in Section 727(a) for denying a debtor's discharge are:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>     (A) property of the debtor, within one year before the date of the filing of the petition; or
>     (B) property of the estate, after the date of the filing of the petition;

60. Allen formed ASD on or about November 10, 2016.

61. In or around April 25, 2024, shortly after the entry of the Judgments, Allen formed ASD II.

62. Shortly after forming ASD II, Allen ceased using Judgment Debtor, ASD, and effectuated the Transfers to move all of ASD's assets and operations to ASD II.

63. At the time of the Transfers, ASD and ASD II shared identical ownership and management.

64. Upon information and belief, Allen controlled all aspects of ASD and ASD II as the founder and sole owner, and the actions taken by ASD and ASD II were extensions of Allen himself.

65. Allen caused ASD to effectuate the Transfers and fraudulently transfer property of the estate to ASD II in and around April 2024, within one year of the Petition Date.

66. Allen effectuated the Transfers after the Judgments were entered, the Judgments were filed as foreign judgments in the State of Maryland, and Plaintiff was taking action to collect on the Judgments.

67. Allen, ASD, and ASD II effectuated the Transfers for the purpose of with the intent to hinder, delay, or defraud his creditors.

68. Since the Transfers, ASD II has engaged in the exact same business in which ASD was engaged prior the Transfers—i.e., serving as the company through which Allen conducted his construction and site development business.

69. Because Allen fraudulently transferred the Transfers within one year prior to the Petition Date, he is not entitled to a discharge pursuant to section 727(a)(2) of the Bankruptcy Code.

### COUNT II— DENIAL OF DISCHARGE (11 U.S.C. § 727(a)(4))

70. Plaintiffs incorporate by reference into this Count, all of the preceding paragraphs of this Complaint.

71. Among the enumerated grounds set forth in Section 727(a) for denying a debtor's discharge is:

> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account;
> (B) presented or used a false claim;
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

72. Allen knowingly and fraudulently, in connection with the bankruptcy case, made false oaths or accounts.

73. Allen committed the following false oaths on his SOFA:

 a. Failure to disclose his legal and equitable interests in the business property owned by ASD and ASD II, including bank accounts and heavy equipment;

11

    b. Failure to disclose all income he received from ASD and ASD II, including the withdrawals included in the Transfers;

    c. Failure to disclose significant transfers and/or payments to other creditors;

    d. Failure to disclose significant transfers and/or gifts to Allen's children.

74. Subject to further discovery, Plaintiffs have reason to believe that additional false oaths and/or material omissions may have occurred in this bankruptcy case.

75. Allen's false oaths were made willfully with the intent to defraud.

76. Because Allen has committed false oaths, he is not entitled to a discharge pursuant to section 727(a)(4) of the Bankruptcy Code.

### COUNT III—DENIAL OF DISCHARGE (11 U.S.C. § 727(a)(5))

77. Plaintiffs incorporate the foregoing Paragraphs as if fully stated herein.

78. Among the enumerated grounds set forth in Section 727(a) for denying a debtor's discharge is:

> (5) the Debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the Debtor's liabilities;

79. The Debtor has failed to explain satisfactorily the following:

    a. How Allen arrived at the valuation of $0 for his 100% membership interest in ASD and his 100% membership in ASD II.

    b. Why Allen answered "No" to Question 37 on Schedule A/B asking, "Do you own or have any legal or equitable interest in any business-related property?" when Allen has interests in bank accounts and construction equipment owned by ASD and ASD II.

    c. The amounts that Allen transferred or gifted to his relatives or other creditors in the two years preceding his present bankruptcy filing.

    d. What legitimate business purpose Allen had for effectuating the Transfers. This information was requested by SOFA Question 18.

    e. What income Allen received from operating a business in 2023; what other income he received in 2023; what income Allen received from operating a business in 2025; what other income he received in 2025. This information was requested by SOFA Question 4, Part 2. But the Debtor simply left these boxes blank.

    f. What payments the Debtor had received from ASD and ASD II other than wages, 401K and pension contributions, owner distributions.

80. Notwithstanding numerous examinations under oath and sworn testimony from the Debtor indicating that the Debtor's SOFA and schedules are incomplete, the Debtor has never amended his SOFA to include this information.

81. Without this information, Plaintiffs and other creditors are not able to discern how Allen allegedly spent all of his cash and ran two businesses into the ground so that there are no funds available for payment to creditors.

82. Based upon these facts, the Debtor's discharge should be denied pursuant to Section 727(a)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter an order in its favor and deny the discharge of Debtor, Steven R. Allen, and for such other relief this Court deems proper.

*/s/ Aaron Turner*
Aaron J. Turner, Federal Bar No.
Jessica L. Duvall, Federal Bar No.
aturner@levingann.com
jduvall@levingann.com
LEVIN GANN PA
1 W. Pennsylvania Ave., Suite 900
Towson, Maryland 21204
(410) 321-0600

*Attorneys for Plaintiffs*
